UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Richard H. Tholen, M.D., | Case No. 17-cv-3919 (DWF/SER) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Assist America, Inc., | |
| Defendant. | |

Patrick M. Arenz and Emily E. Niles, Robins Kaplan LLP, 800 LaSalle Avenue, Suite 2800, Minneapolis MN 55402 (for Plaintiff); and

Mark T. Berhow, Hinshaw & Culbertson LLP, 333 South Seventh Street, Suite 2000, Minneapolis MN 55042, Joanna Lee Storey and Robert J. Romero, Hinshaw & Culbertson LLP, One California Street, Suite 18th Floor, San Francisco CA 94111 (for Defendant).

This matter is before the Court on Plaintiff Dr. Tholen's Second Motion to Compel Discovery from Defendant Assist America, Inc. and Motion to Strike an Improper Errata. (ECF No. 155). The Court held a hearing on March 25, 2019, where it granted the motion to compel, took under advisement the issue of sanctions related to the motion to compel, and took under advisement the motion to strike. (ECF No. 241). The motion to strike is contemplated in a contemporaneous Order. At issue before the Court in this Report and Recommendation are sanctions related to Plaintiff's motion to compel.

**I.   OPERATIONS MANUAL DISCOVERY**

The underlying facts of this case have been detailed in other orders and will not be extensively repeated here. Briefly, Plaintiff Dr. Richard H. Tholen injured his leg in

1

Mexico. Defendant Assist America, Inc., declined to transport Dr. Tholen to the United States for medical care, finding that his medical care in Mexico was sufficient. Dr. Tholen transported himself back to the United States and his leg was amputated above the knee.

Dr. Tholen sought discovery from Assist America concerning its training, procedures, and policies, outlined in the following discovery requests:

> **Request for Production No. 10:** Documents regarding policies, guidelines, protocols, procedures, or process for deciding whether to evacuate an Assist America member.
>  . . .
> **Request for Production No. 11:** Documents regarding policies, guidelines, protocols, procedures, or process for deciding whether an Assist America member is receiving proper care.
>  . . .
> **Request for Production No. 21:** All documents relating to Assist America's training and guidelines provided to [certain enumerated individuals involved in Assist America's interactions with Dr. Tholen and decision concerning his injury].

(ECF No. 158-5, at 5–6, 9; ECF No. 158-6, at 5, 7). Assist America first responded on February 19, 2018. (ECF No. 158-5, at 9). In supplementing its response on March 13, 2018, Assist America asserted it had "produced all responsive documents" to each of these requests. (ECF No. 158-6, at 5, 7; *see* ECF No. 158-7, at 4 (March 6, 2018 letter from Mark T. Berhow indicating Assist America "will be supplementing its response [to Request No. 21 to] produce documents responsive to the request for training and guidelines provided to the specified employees.")).

Assist America responded to Dr. Tholen's second set of interrogatories on August 31, 2018. (ECF No. 234-3). Interrogatory No. 25 asked Assist America to "[i]dentify and

2

describe in detail any remedial measures or revised operating procedures Assist America has implemented following, and due to at least in part, Assist America's handling of Dr. Tholen's request for services in April 2015." (ECF No. 234-3, at 14). Outside of objections, the entirety of Assist America's response was: "Assist America's operating procedures have evolved over time both before and after Dr. Tholen's case due to the regular course of business." (ECF No. 234-3, at 14).

Dr. Tholen's counsel deposed Assist America's CEO, Brian Mulligan, on January 3, 2019 pursuant to punitive damages discovery. Mulligan was asked whether Assist America changed any of its practices following Dr. Tholen's incident. (Jan. 3, 2019 Dep. of Brian Mulligan Tr. 72:16–73:6, ECF No. 158-9). Mulligan stated that Assist America "changed" and "evolved" at that time, but could not attribute it to Dr. Tholen's incident. (*E.g.*, Mulligan Dep. Tr. 75:16–78:5). Several times during the deposition, Mulligan indicated he could not fully answer a question without having Assist America's "manual" in front of him. (*E.g.*, Mulligan Dep. Tr. 127:23–128:5, 244:19–247:4). Mulligan testified that Assist America has a 200–300 page policy and procedure manual that was provided to medical coordinators and others that set forth Assist America's policies and procedures for, *inter alia*, handling member calls, search for medical providers, and search for medical escorts. (Mulligan Dep. Tr. 246:13248:10).

Dr. Tholen moved to compel production of the manuals on January 23, 2019. (ECF No. 155). Two manuals were produced on January 29, 2019. (Decl. of Mark T. Berhow ¶ 6; Decl. of Patrick M. Arenz ¶¶ 5–6; ECF Nos. 236, 237).

3

On March 22, 2019, Assist America's Vice President of Operations, Christopher Gibbs, submitted a declaration in response to Dr. Tholen's motion to compel the production of the manuals. (Decl. of Christopher Gibbs, ECF No. 239). Gibbs declares that he conducted a search in early 2018 of Assist America's files for documents responsive to Dr. Tholen's discovery requests. (Gibbs Decl. ¶ 2). During that search, Gibbs located 110 pages that he believed constituted responsive training and guideline documents. (Gibbs Decl. ¶¶ 4–5). The Operations Manual produced on January 29, 2019 has been in effect since December 24, 2018. (Gibbs Decl. ¶ 8). The Operations Procedures Manual produced on January 29, 2019 was modified from August 2015 to October 2015. (Gibbs Decl. ¶ 9). Gibbs asserts Assist America "do[es] not track what revisions are made or by whom over time" to its manuals. (Gibbs Decl. ¶ 9). Gibbs asserts he cannot find an operations procedure manual that was in effect during April 2015. (Gibbs Decl. ¶ 11). Assist America's failure to produce the manuals in early 2018 was "inadvertent oversight" by Gibbs. (Gibbs Decl. ¶ 12). Gibbs believed the manual had already been produced. (Gibbs Decl. ¶ 12).

As noted above, at the hearing on the motion to compel, this Court granted the motion. The Court ordered Assist America to "produce all versions not already produced of the Assist America Procedure and Policies Manual, dating from 2015 to the present," and to "produce an affidavit detailing the author of each version of the manual, the date each version of the manual was authored, and when each version of the manual was distributed to Assist America employees." (ECF No. 241). The production was due in seven days. (ECF No. 241; *see* ECF Nos. 243, 244). The earliest operations manual

produced dates between August 2015 and October 2015. (ECF Nos. 239, 244). Assist America has not produced an operations manual that was operative in April 2015. (*See* ECF Nos. 239, 244).

## II.   PUNITIVE DAMAGES DISCOVERY OBSTRUCTION

Before addressing the appropriate sanctions related to the operations manual, it is helpful to delve into the discovery process to date to understand how this Court reaches its decision.

This Court granted Dr. Tholen leave to amend his complaint to allege punitive damages. (ECF No. 95). Assist America appealed that order,[1] (ECF No. 97), then moved to preclude any discovery related to punitive damages, (ECF No. 98). The appeal was overruled. (ECF No. 122). Despite that ruling, Assist America refused to participate in punitive damages discovery and maintained its previous motion, asserting that punitive damages discovery could take place only after summary judgment. (*See* ECF No. 125). In that same motion, Assist America move to quash a subpoena issued to its owner and chairman, George Howard. The Court heard Assist America's motions and ordered discovery produced, the deposition to go forward, and for the parties to meet and confer to produce a grid regarding the punitive damages discovery at issue to tailor the scope of said discovery. (ECF Nos. 127, 144).

Dr. Tholen participated in this process as directed, making a good faith effort to narrow his discovery requests. (ECF No. 130). Assist America did not put forth a good

---

[1] To be clear, the parties' substantial motion practice relating to Dr. Tholen's request to amend his complaint does not affect this Court's analysis as to Assist America's behavior during discovery. It is the behavior following the finality of that decision that impacts this Court's analysis.

faith effort, or really any effort whatsoever, to comply with this Court's Order. (*See* ECF Nos. 130, 131). Rather, Assist America asserted that Howard was now "consulting separate counsel[] who will respond on [his] behalf" and also asserted boilerplate objections to the discovery. (ECF No. 130-1). As was discussed at the hearing, none of these objections were previously raised and were thus waived. (ECF No. 144). As a result, this Court denied Assist America's motion in its entirety. (ECF No. 131).

Shortly thereafter, Dr. Tholen moved to compel discovery related to punitive damages, the same discovery this Court had ordered produced. (ECF No. 135). Dr. Tholen also informed this Court that Howard moved to quash the subpoena in the Southern District of New York despite already having sought to quash Howard's subpoena in this District. (*See* ECF No. 141). This Court set an immediate hearing on its previous order concerning the discovery grid and Dr. Tholen's letter regarding Howard's parallel discovery challenge. (ECF No. 142). Assist America then responded to Dr. Tholen's motion compel, asserting that it would produce the documents. (ECF No. 146).

This Court fully granted Dr. Tholen's motion. (ECF Nos. 148, 154). Assist America was required to respond in three days and Assist America's counsel was directed to personally certify to the Court that Assist America had complied. (ECF Nos. 148, 154). This Court also ordered that Assist America promptly produce Howard in Minnesota for a deposition, or find another deponent to testify to all matters contemplated in the subpoena issued to Howard as well as other discovery requests. (ECF Nos. 148, 154). This Court further ordered that, due to Assist America's recalcitrance with respect to discovery it had already ordered produced, any further discovery issues could result in

6

$10,000/day sanctions to Assist America as well as revocation of its attorneys' *pro hac vice* admissions. (ECF Nos. 148, 154).

Assist America refused to participate in punitive damages discovery and dragged its feet every step of the way. This Court warned Assist America that it would not tolerate its tactic of hijacking the discovery process as a means to mount a challenge to this Court's decision to permit pleading of a punitive damages claim. Its punitive damages discovery challenges were rejected wholesale every time they were presented. Throughout these discovery disputes, Assist America and its counsel were not honest and forthright with the Court. Assist America purported to represent Howard's interests in moving to quash the subpoena issued to him, then when this Court ordered the deposition go forward, it claimed Howard was represented by separate counsel. This double-dipping also occurred when Assist America moved for a protective order, lost, and Dr. Tholen was forced to move to compel the same discovery. Dr. Tholen has repeatedly had to bring motions in order for Assist America to produce documents. Even then, Assist America's responses have been lacking. Indeed, during the whole of fact discovery, Assist America produced 308 pages of documents. (ECF No. 234-4). This is a suspiciously low number given the subject matter at dispute. As of March 18, 2019, well beyond the close of fact discovery, Assist America had produced 745 pages, over double that produced during discovery. (ECF No. 234-4). While a number of those documents are certainly related to punitive damages discovery, the present motion shows an appreciable amount should have been produced earlier.

**III.   ANALYSIS**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Assist America does not dispute the relevance of its operations manuals to Dr. Tholen's claims; indeed, Assist America claims it believed it had produced them over one year ago. Nevertheless, despite being asked at Mulligan's deposition for the manual, Assist America failed to produce any version of Assist America's Operations Manual until *after* Dr. Tholen moved to compel. There is no indication that Assist America was voluntarily producing the operations manual. Even when it produced the operations manual in response to Dr. Tholen's motion and this Court's order, Assist America failed to produce the manual that was operative at the time of Dr. Tholen's incident. Assist America's abject failure to produce discovery central to Dr. Tholen's claims, particularly where this Court has already reprimanded Assist America for failing to take its discovery obligations seriously, prejudiced Dr. Tholen's prosecution of this case. The question before this Court is how to remedy Assist America's sanctionable conduct.

Under Rule 37, a court may issue "just orders" for a party's failure to obey discovery obligations. Fed. R. Civ. P. 37(b)(2)(A). This can include: (1) "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims"; (2) "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence"; (3) striking pleadings; (4) dismissing the action in whole

8

or part; (5) rendering a default judgment; and (6) treating the action as contempt of court. Moreover, the Court has discretion and inherent authority to fashion discovery sanctions. *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 702 (8th Cir. 2018); *Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919, 924 (8th Cir. 2014). The "'district court's discretion to fashion a remedy or sanction for discovery violations under Rule 37 is not absolute,' but 'narrows as the severity of the sanction or remedy it elects increases.'" *Vanderberg*, 906 F.3d at 704 (quoting *Doe v. Young*, 664 F.3d 727, 734 (8th Cir. 2011)).

Here, Assist America's failure to engage in a reasonable search for discovery responsive to Dr. Tholen's discovery requests resulted in a depriving Dr. Tholen of the use of the operations manual throughout discovery in this case. Dr. Tholen was denied the opportunity to use or refer to the manual during the deposition of Mulligan and others and was denied the opportunity to reference the manual in expert reports. Most importantly, Dr. Tholen was denied the opportunity to meaningfully inquire into changes to the manual, the reason for the changes, how those changes were highlighted to Assist America employees, and other information related to the "evolving" and "changing" practices of Assist America.

When Dr. Tholen's counsel attempted to delve into the changes to the unseen manual at the deposition of Assist America's CEO, Mulligan was evasive, launching into diatribes about how Assist America constantly "changed" and "evolved," but he was sure there was no way Dr. Tholen's leg injury affected those changes. More damning is the fact that Assist America now admits its operations manual underwent changes in the months following Dr. Tholen's incident but failed to produce documents showing what

the changes were or why. It should not have taken the deposition of Assist America's CEO for Dr. Tholen to learn of the existence of an overarching operations manual for Assist America employees. Nor does this Court find credible Assist America's assertion that the non-production of the manual was mere oversight. Assist America was directly asked in an interrogatory about changes to its operation manuals. Any reasonable investigation undertaken by Assist America in responding to that interrogatory would have uncovered the unproduced operations manuals. Simply put, by failing to fulfill the simplest of its discovery obligations, Assist America has obfuscated information directly relevant to Dr. Tholen's claims, undermining the integrity of the judicial process.

The Court must remedy Assist America's conduct. As Rule 37 and case law demonstrates, the Court has broad discretion in fashioning a remedy. This Court also takes into account its previous warnings to Assist America regarding its discovery conduct. Having read all the parties' submissions to date, participated in telephone calls with counsel, read deposition transcripts, and heard the parties' arguments at hearings, the undersigned is disturbed by the behavior of Assist America. Assist America has frustrated the discovery process as a means to express its dissatisfaction with this litigation; not only the ruling related to punitive damages, but how it views Dr. Tholen's claims in general. Rather than standing on the merits of its defenses and making appropriate corresponding legal arguments, Assist America has opted to be as obstructive as possible. Were this a single occurrence, this Court could overlook the behavior as unintentional. But the pattern of behavior to date leads this Court to a single conclusion: Assist America's non-production of the operations manuals was intentional, knowing,

and part of its litigation strategy. Assist America has sought to defend this lawsuit by choking Dr. Tholen's access to the facts that would support his claims.

The sanction for such conduct must show that such a strategy is improper and unfitting for federal litigants. In fashioning a sanction and remedy, this Court first looks at what Dr. Tholen wanted from Assist America in his discovery requests. Dr. Tholen sought information concerning Assist America's regarding policies, guidelines, protocols, procedures, or process for deciding whether to evacuate an Assist America member. Dr. Tholen also sought information about policies, guidelines, protocols, procedures, or process for deciding whether an Assist America member is receiving proper care. Finally, Dr. Tholen sought how this information was provided to Assist America employees interacting with Dr. Tholen. To date, Assist America has not produced any operations manual operative during April 2015; the earliest manual dates to approximately August 2015.

After careful consideration of the conduct at issue, the discovery requested, and the history and trajectory of this contentious litigation, this Court finds that Rules 37(b)(2)(A)(i) and (ii) provide appropriate guidance. This Court's remedy best addresses the improper conduct of Assist America as a litigant and the failures of its counsel to educate and guide Assist America's decisionmakers about the necessity of participating in an honest and fair discovery processes.[2] The following inferences all arise

---

[2] While discovery sanctions are well-within the province of a magistrate judge's duties, this decision is issued as a report and recommendation, rather than an order, because of the impact it will have on the trial in this matter. Because the district judge will ultimately be tasked with enforcing this discovery order, the undersigned finds it prudent for the district judge to be the ultimate arbiter of these discovery sanctions.

11

from Assist America's failure to produce the operations manuals, particularly the operations manual in effect at the time of Dr. Tholen's incident, to the extent it existed at all. First, Assist America's failure should give rise to the adverse inference that Assist America's operations manual provided insufficient information to properly decide whether to evacuate an Assist America member. Second, Assist America's failure should give rise to the adverse inference that Assist America's operations manual provided insufficient information to properly decide whether an Assist America member was receiving appropriate medical care. Third, Assist America's failure should give rise to the adverse inference that Assist America's operations manual was not sufficiently disseminated to its employees, depriving the employees of guidance from Assist America to properly decide whether to evacuate an Assist America member. Fourth, Assist America's failure should give rise to the adverse inference that Assist America's operations manual was not sufficiently disseminated to its employees, depriving the employees of guidance from Assist America to properly decide whether an Assist America member was receiving appropriate medical care. Fifth, Assist America's failure should give rise to the adverse inference that Assist America has now altered its operations manual as a result of Dr. Tholen's incident.

This Court considered whether monetary sanctions would remedy the conduct at issue. Monetary sanctions appear unlikely to affect Assist America's conduct, particularly where this Court has already threatened hefty monetary sanctions that failed to curb Assist America's improper behavior. The cost of litigation has done nothing to deter Assist America's conduct. More importantly, a monetary sanction does not remedy the

damage Assist America did to Dr. Tholen's development of the facts underlying his case. Just as monetary sanctions are ineffective, so are the other possibilities in Rule 37(b)(2)(A).[3] Of note, extending discovery does little where Assist America has displayed contempt for the discovery process. Rather, it would likely lead to additional disputes that impede progress of this lawsuit. Thus, this Court has concluded the only viable sanction is for the facts that Assist America sought to hide be deemed admitted adversely. Such a sanction is proportionate to the transgression. *See Keefer v. Provident Life and Acc. Ins. Co.*, 238 F.3d 937, 941 (8th Cir. 2000).

## IV.   RECOMMENDATION

Based on the foregoing, and all the records, file, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Assist America be sanctioned as follows:

1. Assist America's failure should give rise to the adverse inference that Assist America's operations manual provided insufficient information to properly decide whether to evacuate an Assist America member.

2. Assist America's failure should give rise to the adverse inference that Assist America's operations manual provided insufficient information to properly decide whether an Assist America member was receiving appropriate medical care.

---

[3] This Court also considered revoking the *pro hac vice* admissions of Assist America's out-of-state counsel as it had warned previously, but decided against it for several reasons. First, this Court cannot fairly determine whether the failures of counsel to educate and guide Assist America's decisionmakers originated with *pro hac vice* counsel or local counsel. Second, this matter is in the midst of summary judgment briefing and is essentially trial-ready. Forcing a change of counsel at this time would not only impact Assist America, but it would adversely impact Dr. Tholen and the Court due to the likely delay in allowing replacement counsel the opportunity to familiarize themselves with this lawsuit. Third, there is no possibility for counsel to redeem themselves and learn from past behavior if they are removed from the consequences of this sanction.

3. Assist America's failure should give rise to the adverse inference that Assist America's operations manual was not sufficiently disseminated to its employees, depriving the employees of guidance from Assist America to properly decide whether to evacuate an Assist America member.

4. Assist America's failure should give rise to the adverse inference that Assist America's operations manual was not sufficiently disseminated to its employees, depriving the employees of guidance from Assist America to properly decide whether an Assist America member was receiving appropriate medical care.

5. Assist America's failure should give rise to the adverse inference that Assist America has now altered its operations manual as a result of Dr. Tholen's incident.

Date: April 18, 2019         *s/ Steven E. Rau*
                             Steven E. Rau
                             United States Magistrate Judge
                             District of Minnesota

                             *Tholen v. Assist America*
                             Case No. 17-cv-3919 (DWF/SER)


## NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).